## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 06-031(JR)** |
| | : | |
| **MAHNDEL A. GREEN,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTIONS TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes defendant's motions to suppress tangible evidence and statements. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

### Factual Background

On January 11, 2006 at approximately 11:30 p.m., Metropolitan Police Department Officer Keith Raynor was riding in a marked police car with a few other officers, when he observed a black Ford Expedition with darkly tinted windows traveling eastbound in the 2400 block of Benning Road, Northeast, Washington. Concerned that the tint on the windows of the Expedition was darker than permitted by law in the District of Columbia, the officers activated the lights and siren on the police car and pulled the Expedition over in the 3300 block of Benning Road. The officers approached the car. When Officer Raynor reached the driver's side window which was partially opened, he smelled the odor of alcohol coming from the car. The officer asked defendant, who was the sole occupant of the vehicle, whether he had been drinking and defendant replied that he had not. The officer saw

a clear plastic cup containing a brownish liquid sitting in the dashboard and a bottle of Remy Martin VOSP in the back seat of the vehicle. Defendant claimed that the liquid was tea. Subsequently, defendant was told to exit the Expedition and informed that he was under arrest. As defendant exited the vehicle, Officer Raynor lifted defendant's sweater, revealing a .9 mm handgun defendant had tucked into his waistband. Once the gun was revealed, defendant stated, "y'all got me. I'm not going anywhere." At some point, officers tested the tint on the windows of defendant's SUV and determined that the tint was darker than allowed by the District of Columbia.

Defendant now seeks to suppress the weapon and the statement, "y'all got me. I'm not going anywhere." Defendant claims that the weapon and the statement were obtained in violation of his Fourth Amendment rights. With respect to the firearm, defendant claims that he did not commit any traffic violation and that he did not commit any offense for which he could be arrested. Defendant's contentions are meritless. First, defendant had committed a traffic violation because the officers saw him operating a vehicle that had windows tinted darker than allowed by D.C. Second, once the officers approached the car, they smelled alcohol, saw a cup containing a liquid that smelled of alcohol sitting in the dashboard of the SUV, and saw a bottle of alcohol in the back seat, giving them probable cause to arrest defendant for possessing an open container of alcohol in violation of D.C. law. Third, once defendant was under arrest, the officers were entitled to search him incident to his arrest, whereupon they found the gun tucked into defendant's waistband. With respect to defendant's statement, defendant contends that it was made involuntarily. The statement was spontaneous and not made in response to questioning. Accordingly, it is not subject to the strictures of Miranda.

I.    **The officers properly stopped defendant to investigate the tint on his vehicle's windows, and upon seeing and smelling alcohol in an open container, properly arrested defendant and searched him.**

    A.    **The officers lawfully stopped defendant.**

On January 11, 2006, Officer Raynor observed defendant operating an Expedition that had heavily tinted windows, causing him to question whether the tint was darker than the level of tint permissible under D.C. law and providing him with grounds to investigate whether a violation had in fact occurred. Indeed, "[t]he Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." United States v. Mitchell, 951 F.2d 1291, 1295 (D.C. Cir. 1991). See also Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) ("there is no question about the propriety of" stopping a car for a traffic violation); Delaware v. Prouse, 440 U.S. 648, 659 (1979) ("The foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations. Vehicle stops for traffic violations occur countless times each day; and on those occasions licenses and registration papers are subject to inspection. . . . "); United States v. Montgomery, 561 F.2d 875, 879 (D.C. Cir. 1977) ("The police may stop and question the driver of a vehicle when an infraction of the motor vehicle code is seen or suspected."). Thus, the officers had clear authority to pull the defendant over to enforce traffic regulations. Furthermore, even a mistake of fact will support a vehicle stop, see, e.g., United States v. Busillos-Munoz, 235 F. 3d 505 (10th Cir. 2000)(Officer suspected high beams were on, officer incorrect but suspicion reasonable, stop valid).

**B.    The officers lawfully arrested defendant.**

The Fourth Amendment permits police to make warrantless arrests based upon probable cause to believe that a crime was being committed.  United States v. Wesley, 293 F.3d 541, 545 (D.C. Cir. 2002).  Probable cause to arrest is viewed from the perspective of the police officer and it is a decision that is reviewed based upon the totality of the circumstances confronting the officer at the time of the events leading up to the arrest.  Illinois v. Gates, 462 U.S. 213, 230-32 (1983). Probable cause exists where the arresting officer possesses information "sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense."  Beck v. Ohio, 379 U.S. 89, 91, (1964); see also United States v. Green, 670 F.2d 1148, 1152 (D.C.Cir.1981).  Upon smelling alcohol emanating from the Expedition, seeing a cup containing liquid that smelled of alcohol sitting in the dashboard of the vehicle, and observing a bottle of alcohol in the back seat, the officers had probable cause to believe defendant had committed a crime because possession of an open container of alcohol is illegal in the District of Columbia.  See D.C. Code §25-1001 (a)(2).  Accordingly, they had probable cause to arrest defendant.

**C.    The officers lawfully searched defendant.**

After making a valid arrest, police may make a full search of the arrestee as well as the area under the arrestee's personal control at the time of the arrest.  Chimel v. California, 395 U.S. 752, 763 (1969).  In this case, once the officers concluded that the cup in defendant's car contained alcohol, they informed defendant that he had to exit his vehicle because he was under arrest.  As a result of defendant's arrest, the officers were permitted to search defendant's person.  Accordingly, the officers began their search by lifting defendant's sweater as he exited the SUV, revealing the gun defendant had tucked into his waistband.

-4-

## II. **Defendant's statement volunteered statement is admissible.**

Lastly, defendant contends that his statement, "y'all got me. I'm not going anywhere" should be suppressed because it was made involuntarily.[1] Defendant's contention is meritless since he was not being interrogated, within the meaning of <u>Miranda</u>, at the time he made the statement. Rather, the statement was volunteered.

### A.    **Defendant spontaneously made his statement.**

<u>Miranda</u> warnings must only be given when a suspect is in custody and subject to interrogation. "[By] custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). The Supreme Court has noted:

> The <u>Miranda</u> safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under <u>Miranda</u> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the <u>Miranda</u> safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

---

[1]    Defendant does not seek to suppress any of the other statements he made during his interactions with the police. <u>See</u> Defendant's Motion to Suppress Statement at ¶ 2.

Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980) (footnotes omitted).  Additionally, a spontaneous statement is admissible, whether it is made before or after arrest, regardless of the presence or lack of Miranda warnings.  See United States v. Samuels, 938 F.2d 210, 214 (D.C. Cir. 1991).  Although defendant was in custody at the time he made his statement, he was not being questioned by the police.  The officers offered no reason or provocation to coerce the defendant into making incriminating statements. In fact, the police had no intention of eliciting an incriminating response since they were not even speaking with the defendant at the time. Therefore, the circumstances do not indicate the defendant was being interrogated. Rather, the defendant spontaneously volunteered the statement, once he realized the officers had discovered the weapon he was carrying in his waistband.

## B.    The statement was made voluntarily.

The statement was made voluntarily, and thus is admissible.  "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda, supra, 384 U.S. at 478.  It is well settled that the voluntariness of statements by a defendant is to be determined on a case-by-case basis by examining the totality of the circumstances.  North Carolina v. Butler, 441 U.S. 369, 374-375 (1979);  United States v. McNeil, 433 F.2d 1109, 1112 (D.C. Cir. 1969).  A statement is voluntary for purpose of due process so long as the statement is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973);  Culombe v. Connecticut, 367 U.S. 568, 602 (1961).  Defendant fails to proffer any facts which would indicate that his will was overborne.  See Rogers v. Richmond, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined").

Defendant's contact with police in the instant case took place on a public street at approximately 11:30 p.m.  It was only minutes in length, and there is no indication on the facts of this case that the defendant was physically intimidated or tricked into speaking.  Moreover, for a statement to be involuntary, it must have been caused by government overreaching.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 163-64 (1986) ( "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law").  Defendant has pointed to no indication of such conduct in this case.

<u>**CONCLUSION**</u>

        WHEREFORE, for the reasons stated above, the United States respectfully submits that defendant's motion to suppress tangible evidence and statements should be DENIED.

                    Respectfully submitted,

                    KENNETH L. WAINSTEIN
                    United States Attorney

_____

                    _____
                    Denise M. Clark
                    Assistant United States Attorney
                    Federal Major Crimes Section, Bar No. 479149
                    555 4th Street, N.W.  #4840
                    Washington, DC 20530
                    (202) 353-8213; Fax: 353-9414